UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LEONARD TORRES, | ) | No. EDCV 09-335 FFM |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for social security benefits and Supplemental Security Income benefits. On March 12, 2009 and March 19, 2009, plaintiff and defendant, respectively, consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the case management order entered on March 3, 2009, on September 22, 2009, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR"), filed by defendant on July 28, 2009, and the Joint Stipulation (the "JS"). For the reasons stated below, the decision of the Commissioner is reversed and remanded for further proceedings.

/ / /

/ / /

/ / /

**PROCEDURAL HISTORY**

On March 22, 2007, plaintiff applied for disability insurance benefits and Supplemental Security Income benefits. (*See* AR 52-55.) Plaintiff's applications were denied initially and upon reconsideration. (AR 52-55, 56-59, 61-65.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 66.) ALJ Michael D. Radensky held a hearing on September 18, 2008. (AR 16-51.) Plaintiff appeared without counsel and testified at the hearing. (*See id.*)

On December 2, 2008, the ALJ issued a decision denying benefits. (AR 10-15.) On December 30, 2008, plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 6.) The Appeals Council denied plaintiff's request for review on January 13, 2009. (AR 1-3.)

Plaintiff filed his complaint herein on February 27, 2009.

**CONTENTIONS**

Plaintiff raises five issues in this action:

1. Whether the ALJ properly considered the Comprehensive Psychiatric Evaluation completed by the treating psychiatrist;
2. Whether the ALJ properly considered the lay witness testimony;
3. Whether the ALJ complied with Social Security Ruling 96-7p regarding the type, dosage, effectiveness, and side effects of plaintiff's medications;
4. Whether the ALJ properly considered plaintiff's mental residual functional capacity; and
5. Whether the ALJ posed a complete hypothetical to the vocational expert.

///
///
///
///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003).

**DISCUSSION**

1. <u>The treating psychiatrist's evaluation.</u>

On May 2, 2008, Daryoush Jamal, M.D., completed a Comprehensive Psychiatric Evaluation form upon plaintiff's admission to City of Angels Medical Center for emergency psychiatric care. (AR 278-79.) Dr. Jamal reported that plaintiff had decreased sleep, appetite, energy, and interest and had a disheveled appearance. (AR 279.) Dr. Jamal further reported that plaintiff exhibited poor impulse control, a distressed and anxious mood, and a blunt affect. (*Id.*) Dr. Jamal also noted that plaintiff was suffering from hallucinations. (*Id.*) Dr. Jamal diagnosed plaintiff with

///

1  major depressive disorder, recurrent, severe, with psychotic features and assigned
2  plaintiff a Global Assessment of Functioning ("GAF") score of 20.[1]  (AR 278.)
3         On May 6, 2008, Dr. Jamal completed a Discharge Summary form upon
4  plaintiff's discharge from City of Angels Medical Center.  (AR 276-77.)  Dr. Jamal
5  reported that during his stay, plaintiff was started with therapy and given various
6  medications, including, *inter alia*, risperidone 2mg, Zoloft 50 mg, and Zyprexa 20 mg.
7  (AR 276.)  After continuing treatment, plaintiff stabilized and was discharged to his
8  family "with condition improved."  (AR 277.)  Dr. Jamal gave plaintiff a "final
9  diagnosis" of major depressive disorder, recurrent, moderate.  He further noted that
10 upon admission, plaintiff had a GAF score of "15"; he assigned plaintiff a GAF score
11 of 45[2] upon discharge.  (AR 276.)  He further noted, "[E]arly recognition of the illness
12 to prevent rehospitalization was discussed."  (AR 277.)

---

[1] The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR").  Axis V is the Global Assessment of Functioning (the "GAF"), or, for persons under the age of 18, the Children's Global Assessment Scale.  The GAF reports the clinician's judgment of the individual's overall functioning.  *Id.* at 32-33.  A GAF score of 11-20 indicates that there is "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR [the patient] occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR [the patient exhibits] gross impairment in communication (e.g., largely incoherent or mute)."  *Id.* at 34.

[2] A GAF score of 41-50 indicates that the patient has "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  DSM-IV-TR at 34.

4

1    In his decision, the ALJ discussed Dr. Jamal's notes as follows:

2 > [Plaintiff] has been variously diagnosed with a major
3 > depressive disorder, recurrent, moderate, and was most
4 > recently hospitalized as a danger to himself on May 2, 2008
5 > (Exhibit 11F).  At the time of admission, he had a Global
6 > Assessment of Functioning of only 15, which had improved
7 > to 45 by the time of discharge on May 6, 2008 (Exhibit 11F).

8 (AR 11.)  Relying on the testimony of the medical expert, Joseph Malancharuvil, M.D.
9 (AR 32-33), the ALJ found that plaintiff had the severe impairments of substance-
10 induced psychotic disorder; personality disorder, not otherwise specified; and history
11 of polysubstance abuse.  (AR 12, 14.)  The ALJ also found that despite plaintiff's
12 mental impairments, plaintiff had only "mild restrictions of his activities of daily
13 living" and "mild difficulties maintaining social functioning."  (AR 13; *see also* AR
14 32-33.)

15    Plaintiff contends that the ALJ failed to provide legally sufficient reasons for
16 rejecting Dr. Jamal's May 2, 2008 assessment of plaintiff.  (JS 3-4.)  The Court agrees.
17 In evaluating physicians' opinions, the case law and regulations distinguish among
18 three types of physicians:  (1) those who treat the claimant (treating physicians); (2)
19 those who examine but do not treat the claimant (examining physicians); and (3) those
20 who neither treat nor examine the claimant (non-examining physicians).  *Lester v.*
21 *Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*,
22 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.902,
23 404.1527(d), 416.927(d).  As a general rule, more weight should be given to the
24 opinion of a treating source than to the opinions of physicians who do not treat the
25 claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. §§
26 404.1527(d)(2), 416.927(d)(2).
27 / / /
28 / / /

The Ninth Circuit has held that an ALJ may reject a treating physician's uncontradicted opinion on a medical impairment or the ultimate issue of disability only with "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted). If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

As noted above, Dr. Malancharuvil's testimony contradicted Dr. Jamal's May 2, 2008 assessment. (*See* AR 32-33.) The ALJ was thus required to provide specific, legitimate reasons for rejecting Dr. Jamal's opinion in favor of Dr. Malancharuvil's testimony. The Court finds that he did not do so. At most, the ALJ indicated that plaintiff's GAF score upon admission represented only a temporary loss of functioning. (*See* AR 11.) However, Dr. Jamal's May 6, 2008 assessment assigned plaintiff a GAF of 45, which indicated that even upon discharge, plaintiff had serious symptoms or serious impairment in functioning. (*See* AR 276; *see also* DSM-IV-TR at 34.) The May 6, 2008 assessment also indicated that the potential for rehospitalization was a concern, which further suggests that plaintiff's condition, although improved, was still serious. (*See* AR 277.) Thus, to extent the ALJ sought to reject Dr. Jamal's May 2, 2008 opinion on the ground that plaintiff showed improvement, the ALJ did not provide a specific, legitimate reason for rejecting the opinion.

///

Moreover, although the ALJ set forth the substance of the varying opinions to some degree, it is not entirely clear why the ALJ ultimately rejected Dr. Jamal's

6

1 diagnosis of major depressive disorder, recurrent, with psychotic features, in favor of
2 Dr. Malancharuvil's conclusion that plaintiff's impairments were all substance-
3 induced.  (*See* AR 11-12.)  Although, as discussed below, plaintiff was inconsistent in
4 his reports as to when he stopped abusing drugs, the ALJ specifically found that
5 plaintiff was abusing drugs "through at least March 2007, when he required a brief
6 psychiatric hospitalization."  (AR 12; *see* AR 194-203.)  The ALJ reasoned that
7 plaintiff stabilized quickly on medications, suggesting that he was not severely
8 mentally ill at the time.  (AR 12; *see* AR 196, 201 (indicating that plaintiff was
9 prescribed Celexa and Seroquel and discharged after three days).)  The ALJ did not
10 address, however, whether plaintiff was abusing drugs when he was hospitalized in
11 May of 2008 or whether plaintiff was severely mentally ill at the time.  (*See* AR 12.)
12 In light of these considerations, the Court cannot conclude that the ALJ properly
13 addressed Dr. Jamal's May 2, 2008 opinion.  *See Magallanes*, 881 F.2d at 751; *see*
14 *also Macri v. Chater*, 93 F.3d 540, 546 (9th Cir. 1996) ("[T]o ensure meaningful
15 appellate review at least a minimal level of articulation of the ALJ's assessment of the
16 evidence is required in cases in which evidence is presented to counter the agency's
17 position") (internal quotation marks omitted).

18       Defendant argues that the ALJ's conclusion is supported by substantial
19 evidence.  (JS 4-7.)  In support of that argument, defendant points to the June 1, 2007
20 psychiatric evaluation performed by Romualdo R. Rodriguez, M.D., an examining
21 physician.  (*Id.*; AR 204-210.)  Dr. Rodriguez opined, in pertinent part, that plaintiff
22 could understand, remember, and carry out detailed and complex instructions and was
23 only minimally or slightly limited in other areas of work functioning.  (AR 209.)  He
24 further opined that plaintiff could recover from his symptoms within 12 months if he
25 abstained from drugs and alcohol.  (AR 208.)  Defendant argues that because Dr.
26 Rodriguez conducted his own examination of plaintiff, his opinion constituted
27 substantial evidence, on which the ALJ was entitled to rely.  (JS 4-5 (citing
28 *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).)  Defendant further

7

argues that because Dr. Malancharuvil's opinion was not contradicted by *all* other evidence in the record, the ALJ could rely on that opinion as well. (JS. 5 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995)).)

    Defendant's argument is not well taken. Even if an examining or nonexamining physician's opinion constitutes substantial evidence that contradicts the treating physician's opinion, the treating physician's opinion may still be entitled to deference under the Social Security regulations *Orn v. Astrue*, 495 F.3d 631, 631-33 (9th Cir. 2007) (citing, *inter alia*, 20 §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii)); *see also* Social Security Ruling ("S.S.R.") 96-2p, 1996 WL 374188 (S.S.A.) at *4. Under those circumstances, the ALJ must consider certain enumerated factors in determining the weight to give the treating physician's opinion. *See* 20 §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii); *Orn*, 495 F.3d at 631. The ALJ did not set forth his reasons for declining to defer to Dr. Jamal's opinion. Thus, even if Dr. Rodriguez's and Dr. Malancharuvil's opinions constituted substantial evidence, the Court cannot conclude, on the record before it, that the ALJ was entitled to rely on them.

    Defendant further notes, correctly, that Dr. Jamal did not assign plaintiff any work limitations. (JS 5-6; *see* AR 278-79.) Dr. Jamal did, however, assign plaintiff a series of low GAF scores indicating lingering serious symptoms and/or limitations in functioning. (*See* AR 278-79.) In addition, the concern over the risk that plaintiff might again decompensate[3] bears on plaintiff's ability to function in the workplace. (*See* AR 279.) The Court acknowledges that GAF scores have a somewhat limited utility in determining functioning. *See* 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings"). However, the Court finds that Dr. Jamal's May 2, 2008 assessment is sufficiently probative of plaintiff's ability to function in the

---

    [3] Episodes of decompensation are exacerbations of or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning. 20 C.F.R. Part 404, subpt. P, app. 1, § 12:00(C)(4).

workplace to merit discussion.

For the foregoing reasons, remand is warranted for the ALJ to reconsider Dr. Jamal's May 2, 2008 opinion.

2.   <u>The lay witness statements</u>.

Plaintiff testified that he lived with his mother and sister. (AR 30.) On April 10, 2007, Tessa Torres, plaintiff's mother, completed a Third Party Function Report - Adult. (AR 161-68.) Torres stated that plaintiff's impairments affected his ability to sleep because he woke up during the night with nightmares. (AR 162.) She further stated that plaintiff's impairments affected his personal care, in that he changed clothes every two to three days and bathed every other day. (*Id.*) She further asserted that plaintiff had to be reminded to take care of his personal needs and to take medication. (AR 163.)

Torres further reported that plaintiff was afraid to be alone and had to be reminded to go places. (AR 164-65.) Torres stated that plaintiff's impairments had affected his speech, memory, and ability to complete tasks, concentrate, and follow instructions. (AR 166.) She also asserted that she had to remind plaintiff to do things and that he used to read, but could no longer concentrate. (*Id.*) She further stated that plaintiff had been laid off from work because he could not concentrate and that he thought that the voices in his head were real. (AR 167.)

In his decision, the ALJ did not specifically mention Torres's report. (*See* AR 10-15.) Plaintiff argues that the ALJ accordingly failed to provide sufficient reasons for rejecting Torres's statements. (JS 7-9, 12.) The Court disagrees.

The Social Security regulations provide that the ALJ "may . . . use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). In turn, the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

1987); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993) (ALJ must consider lay testimony concerning a claimant's ability to work); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (same). This holding applies equally to sworn hearing testimony of witnesses (*see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (*see Schneider v. Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

As a general rule, if the ALJ chooses to reject such evidence from other sources, he may not do so without comment (*Nguyen*, 100 F.3d at 1467) and he must provide "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at 919; see also *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (dismissing witness testimony simply because witness is family member not sufficiently germane to witness)). However, if the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the reviewing court may find the error harmless. *Stout*, 454 F.3d at 1056.

In setting forth his reasons for finding that plaintiff was not disabled, the ALJ asserted, "[Plaintiff] also testified that his mother 'gets on him' because he is not doing anything, which suggests that she believes he can work if he were so motivated." (AR 13.) Plaintiff did not testify that his mother "g[ot] on him" *per se*. However, he did testify that he and his mother did not get along because he did nothing in the house and she was tired of taking care of him. (AR 30-31.) Although that testimony could have been interpreted more favorably to plaintiff, it was reasonable for the ALJ to conclude that Torres was clashing with plaintiff because she believed that he could accomplish more if he tried. Thus, although the ALJ did not specifically mention Torres's report, the ALJ made clear that Torres was not credible in claiming that plaintiff was unable to function in the workplace. The ALJ thus provided a reason germane to Torres for rejecting her statements. *See Dodrill*, 12 F.3d at 919; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("When the evidence before the

ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion").

Furthermore, even if the ALJ had not provided sufficient reasons for discrediting Torres, the Court would still find that remand was not warranted. Torres reported, essentially, that plaintiff had problems with concentration and that his impairments affected his social functioning to some degree (*e.g.*, he believed that the voices in his head were real). *See* discussion, *supra.* However, as defendant argues (JS 9-10), the ALJ accounted for plaintiff's problems with concentration and social functioning by limiting plaintiff to an object-oriented, habituated setting, with no excessive public contact, no work which would expose him to safety hazards, and no operation of hazardous machinery. (AR 14; *see* AR 33-34 (Dr. Malancharuvil's testimony regarding limitations accommodating plaintiff's distractibility and sensory disturbances).) Thus, even if Torres's statements were fully credited, the ALJ would not have reached a different disability determination. Any error was therefore harmless. *See Stout*, 454 F.3d at 1056.

For the foregoing reasons, remand on this issue is not warranted.

3. <u>Plaintiff's medications</u>.

A July 11, 2007, medication record from the County of San Bernardino Department of Behavioral Health ("CSBDBH") indicates that Marissa Mejia, M.D., plaintiff's treating psychiatrist, prescribed plaintiff 20 mg of Celexa, to be taken every morning, 300 mg of Seroquel, to be taken every night; and 300 mg of Seroquel, to be taken every morning. (AR 254.) Plaintiff's CSBDBH medication record indicates that between June of 2005 and July of 2007, Dr. Mejia frequently adjusted plaintiff's medication. (AR 254-56.) For example, in January of 2006, plaintiff was taken off Risperdal and started on trazodone; in May of 2006, Dr. Mejia increased his Ablify and trazodone dosages; in March of 2007, Dr. Mejia discontinued Ablify and trazodone and prescribed Celexa and Seroquel. (AR 254-55.) In an undated disability report, plaintiff asserted that Seroquel made him tired and "knock[ed] [him] out." (AR

1 | 142.)

2 | In assessing plaintiff's credibility under S.S.R. 96-7p, the ALJ asserted:

> [Plaintiff's] usage of prescription medications [is not] consistent with a finding that he would experience disabling psychiatric symptoms in the absence of drug and/or alcohol abuse. [Plaintiff] reported that he does not want to change his psychotropic medications which, according to him[,] work only two days out of two weeks. Yet, [plaintiff] is able to drive. He has lost his drivers license due to too many unpaid tickets.

(AR 13.)

Citing S.S.R. 96-7p, plaintiff contends that the ALJ failed to properly consider the type, dosage, effectiveness, and side effects of plaintiff's prescription medication use.[4] (JS 13-15, 17.) The Court finds that remand is not warranted.

First, S.S.R. 96-7p does not require that the ALJ consider whether medication usage, *in itself*, might prevent a claimant from working. *See* S.S.R. 96-7p, 1996 WL 374186 at *3. Rather, S.S.R. 96-7p advises that consideration of the claimant's statements on medication use, along with other evidence in the record, provides the ALJ with an overview of the claimant's subjective complaints in order for the ALJ to evaluate the claimant's credibility. The Ruling advises that in drawing conclusions about the claimant's credibility, the ALJ may also consider, for example, whether the claimant's statements are consistent internally and with other information in the record. *Id.* at *5.

---

[4] Plaintiff also argues that plaintiff's frequent medication adjustments suggest numerous episodes of decompensation. (JS 14.) The Court addresses this argument in Section 4, *infra*.

12

Here, the ALJ properly found plaintiff less than credible.[5] First, as the ALJ asserted, plaintiff testified that his medications only worked two days out of every two weeks. (AR 37.) However, plaintiff also testified that he could sufficiently manage his auditory hallucinations and distractibility to be able to drive, although he had lost his license over unpaid parking tickets. (AR 39-41.) Although this testimony could have been interpreted more favorably to plaintiff, it was not unreasonable for the ALJ to conclude that plaintiff's medications worked better than plaintiff claimed, and that plaintiff was thus less than credible.

Moreover, as the ALJ noted, plaintiff made numerous inconsistent statements regarding his daily activities, his social functioning, and his psychiatric treatment. (AR 13.) As the ALJ asserted, plaintiff initially testified that when he hung out with his friends, he would play video games with them. (AR 31-32.) He later testified that he did not actually play video games, but only watched his friends play them. (AR 39.) He initially testified that he only saw his friends once every few months, but then indicated that he saw them more often. (AR 31-39.) Plaintiff also testified that he was reluctant to discuss his auditory hallucinations with his psychiatrist, but as the ALJ noted, the record reflects that plaintiff frequently discussed his hallucinations during treatment. (AR 37-38; *see*, *e.g.*, AR 232, 234, 235, 240, 246.)

---

[5] Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). An ALJ may reject a claimant's allegations upon: (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

1  Furthermore, as the ALJ noted (*see* AR 13, 34), plaintiff was inconsistent in his
2  reports as to when he stopped using drugs. (*See* AR 206 (reporting last usage in May
3  2006), 200 (reporting last usage in approximately February 2007), 234 (reporting in
4  May 2007 that he was using again).) The inconsistencies within plaintiff's statements,
5  and between plaintiff's testimony and the record, further undermined plaintiff's claims
6  of disabling pain or other subjective symptoms. *See Thomas v. Barnhart*, 278 F.3d
7  947, 958-59 (9th Cir. 2004) (discounting credibility where plaintiff presented
8  "conflicting information" about her alcohol and drug use and engaged in activities
9  inconsistent with claim of disability); *see also* 20 C.F.R. §§ 404.1529(c)(4),
10 416.929(c)(4).[6]

11  Second, plaintiff points to no evidence in the record that the alleged side effects
12 from Seroquel were so severe that they actually interfered with his ability to work, nor
13 could the Court find any. In fact, plaintiff frequently did not report *any* side effects
14 from *any* of his medications. (*See*, *e.g.*, AR 232, 234-36, 238-39, 242-43.) Ninth
15 Circuit precedent indicates that where there are only passing mentions of medication
16 side effects in the record, without evidence that the ability to work is compromised, an
17 ALJ does not commit reversible error where he fails to consider the alleged side
18 effects, particularly where the ALJ discredits the plaintiff's subjective testimony on
19 other grounds. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *Thomas*, 278
20 F.3d at 960; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ
21 need not discuss evidence that is neither significant nor probative); *but see Varney v.*
22 *Secretary of Health & Human Servs.*, 846 F.2d 581, 585-86 (9th Cir. 1998) (where
23 plaintiff testified to "fairly severe side effects" from several different kinds of

---

[6] The ALJ provided several other reasons for finding plaintiff incredible. (*See* AR 13.) The Court finds that the numerous inconsistencies discussed above were sufficient to find plaintiff incredible; thus, even if the ALJ erred with respect to those other reasons, such error would be harmless. *Batson*, 359 F.3d at 1197.

14

1  medication, ALJ had to support rejection of testimony with specific findings), *reversed*
2  *and remanded on other grounds*, 859 F.2d 1396 (9th Cir. 1988).

3  In light of the foregoing, the Court finds that the ALJ sufficiently addressed
4  plaintiff's medication use within the mandate of S.S.R. 96-7p. Remand on this issue is
5  therefore not warranted.

6  4.   Plaintiff's residual functional capacity.

7  Under the Social Security regulations, when there is a colorable claim of a
8  mental impairment, the ALJ must rate the claimant's functional limitations in three
9  areas: activities of daily living; social functioning; and concentration, persistence, and
10 pace. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must determine
11 whether the claimant's limitations in the respective areas are nonexistent, mild,
12 moderate, marked, or extreme. *Id.* In addition, the ALJ must determine the number of
13 the claimant's episodes of decompensation, from none to four or more. 20 C.F.R. §§
14 404.1520a(c)(4), 416.920a(c)(4).

15 The ALJ must use the ratings to determine whether the claimant has a severe
16 mental impairment or impairments. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If
17 the impairment or impairments are severe, the ALJ must then use the ratings, and the
18 relevant medical findings, to determine whether the impairment or impairments meet
19 or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404,
20 Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the
21 impairment or impairments do not meet or medically equal a listed impairment, the
22 ALJ must then assess the claimant's residual functional capacity. 20 C.F.R. §§
23 404.1520a(d)(3), 416.920a(d)(3).

24 In his decision, the ALJ asserted:
25      Despite [plaintiff's] combined mental impairments, he
26      experiences only mild restriction of his activities of daily
27      living; mild difficulties maintaining social functioning;
28      moderate difficulties maintaining concentration, persistence

     or pace; and no episodes of decompensation in the absence of
     drug and/or alcohol abuse.

(AR 13.)

  Plaintiff contends, in essence, that the ALJ's assessment of plaintiff's functional limitations and episodes of decompensation is not supported by substantial evidence. (JS 17-20, 22.) Plaintiff argues that, as evidenced by Dr. Jamal's May 2, 2008 opinion, plaintiff experiences "more than mild symptoms in his activities of daily living when he is not functioning at his ultimate level." (JS 18.) Plaintiff further argues that each adjustment of his medication is evidence of a discrete episode of decompensation. (JS 18-19 (citing 20 C.F.R. Part 404, subpt. P, app. 1, § 12.00(C)(4) (noting that episodes of decompensation may be inferred from medical records showing significant alteration in medication)). Plaintiff also contends that plaintiff's SBCDBH treating notes show that he experienced psychiatric symptoms during periods in which he reported being sober; plaintiff contends that his mental impairments and episodes of decompensation were therefore independent of his substance abuse. (JS 19-20 (citing AR 232, 235, 240, 246).)

  The Court finds that remand on this issue is warranted. First, the Court has ordered that the ALJ reconsider Dr. Jamal's May 2, 2008 opinion. The Court also found that the ALJ did not adequately explain his reasons for adopting Dr. Malancharuvil's conclusion that plaintiff's impairments were substance-induced and did not adequately address plaintiff's May 2008 hospitalization. *See* discussion, *supra*. As the ALJ must redetermine those issues on remand, reconsideration of plaintiff's limitations in the areas of functioning cited above is warranted.

  The Court is somewhat dubious of plaintiff's claim that each medication adjustment represented a discrete episode of decompensation. However, in light of the ALJ's failure to address plaintiff's May 2008 hospitalization, the Court finds that reconsideration of plaintiff's episodes of decompensation is appropriate. As
///

plaintiff's medication usage may, in theory, evidence such an episode, the ALJ must address plaintiff's medications in that context.

For the foregoing reasons, remand for the ALJ to reconsider plaintiff's functional limitations and episodes of decompensation under 20 C.F.R. §§ 404.1520a and 416.920a is warranted. The ALJ must also redetermine whether plaintiff's impairments meet or medically equal a listed impairment and plaintiff's residual functional capacity. *See* discussion, *supra*.

5. <u>The hypothetical to the vocational expert</u>.

At the hearing, the ALJ posed the following hypothetical to the vocational expert ("VE"):

> Q: The first hypothetical I want you to assume a younger individual with an eleventh grade education and the past work you've identified. And I want you to assume for this hypothetical that the claimant has no exertional limitations. He can do, he is capable of moderately complex tasks in the habituated setting, up to four to five step instructions. He should perform object oriented work. He can have ordinary public contact but no excessive public contact. There should be no hyper vigilance. He should not be in charge of any safety operations and he should not be working around any hazardous machinery. Would such an individual be able to perform the past work that you've identified?

(AR 47.) The VE responded that the individual would be able to perform plaintiff's past work as a sign holder and production assembler, and that he could also work as a food service worker, hospital cleaner, and hand packer. (AR 48.)

The ALJ then asked the VE, "If the claimant were limited to simply simple repetitive tasks in an object oriented setting would that change your testimony?" (*Id.*) The VE responded that plaintiff would be able to perform all of the cited jobs

except the food service worker position. (*Id.*) Relying on the VE's testimony, and omitting the limitation to simple, repetitive tasks, the ALJ found that plaintiff could work as a food service worker, hospital cleaner, and hand packer and was therefore not disabled. (AR 15.)

Plaintiff contends that the ALJ failed to pose a complete hypothetical to the VE. (JS 23-24, 25.) Plaintiff argues that the ALJ failed to take into account limitations suggested by Dr. Jamal's May 2, 2008 opinion and plaintiff's "multiple episodes of decompensation." (JS 24.) The Court finds that remand on this issue is warranted.

Claims of disability are evaluated under a five-step sequential procedure. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). If, at step four of the procedure, the claimant meets his burden of establishing an inability to perform past work, at step five, the Commissioner has the burden of showing that he can engage in other substantial gainful work that exists in the national economy, taking into account his residual functional capacity, age, education, and work experience. A VE's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value"). Conversely, the hypothetical need not include limitations which do not find support in the record. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

As discussed above, the Court has ordered remand for the ALJ to reconsider Dr. Jamal's May 2, 2008 opinion; plaintiff's functional limitations; plaintiff's episodes of decompensation; and plaintiff's residual functional capacity. If, upon such reconsideration, the ALJ changes his conclusions as to plaintiff's limitations and residual functional capacity, the ALJ must pose a new hypothetical to the VE that

accurately describes all of the limitations and restrictions of the claimant that are supported by the record.

## CONCLUSION

For the foregoing reasons, the judgement of the Commissioner is reversed and remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED: October 19, 2010

                                           /S/ FREDERICK F. MUMM
                                            FREDERICK F. MUMM
                                      United States Magistrate Judge